IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HARRY R. FOWLER, | ) | 8:09CV65 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| WERNER ENTERPRISES, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 34.) As set forth below, the Motion is granted and this matter is dismissed with prejudice.

## I.   BACKGROUND

Plaintiff Harry R. Fowler ("Fowler") filed his Complaint against Defendant Werner Enterprises ("Werner") in the U.S. District Court for the District of Colorado on October 3, 2008. (Filing No. 1.) Summarized, Plaintiff alleges that Defendant discriminated against him in violation of the Americans with Disabilities Act (the "ADA"). (*Id.*) Plaintiff also alleges that he suffered retaliation for the filing of a charge of discrimination with the Equal Employment Opportunity Commission. (*Id.* at CM/ECF p. 7.) On February 17, 2009, the District of Colorado granted Defendant's Renewed Motion to Transfer Venue, and transferred this matter to this court. (Filing No. 20.)

On June 17, 2009, Defendant filed its Motion for Summary Judgment (filing no. 34), along with a Brief (filing no. 35) and an Index of Evidence (filing no. 36) in support of the Motion. Plaintiff thereafter filed his Request for a Hearing to Fully Respond to the Motion for Summary Judgment. (Filing No. 37.) Defendant filed its

Motion to Strike that pleading, which was alternatively submitted as Defendant's Reply Brief. (Filing No. 42.) Plaintiff did not submit any other documents in opposition to the Motion for Summary Judgment.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

The court has carefully reviewed the documents submitted by both parties. The court liberally construes Plaintiff's Request for a Hearing as a response to the Motion for Summary Judgment. (Filing No. 37.) Thus, Defendant submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiff has not submitted any "concise response" to those facts. Further, Defendant submitted evidence which was properly authenticated by affidavit. Plaintiff submitted only unsupported statements and arguments. This matter is deemed fully submitted and the undisputed material facts set forth by Defendant in its Brief are "deemed admitted" and are adopted below.

## II. RELEVANT MATERIAL FACTS

1. Fowler is a former employee of Drivers Management LLC ("DM"), a wholly-owned subsidiary of Werner.

2. During Fowler's employment with Werner, he worked as an interstate truck driver.

3. In September, 2006, Fowler transferred from the general van division to a dedicated account, the Alco/Duckwall account. Dedicated accounts haul freight for one particular customer whereas the general van division hauls freight for a variety of customers. The Alco/Duckwall account is based out of Abilene, Kansas. During Plaintiff's assignment to this account, Wesley Myers ("Myers") was the Operations Supervisor for the account.

4. Prior to filing a discrimination charge, Fowler informed operations personnel on the Alco/Duckwall account that he had to go to Denver to obtain some new medication. No representative of the Company inquired about the prescribed reason or type of medication and Fowler did not provide that information. At the time of the alleged discriminatory acts, Werner had no knowledge regarding the specific type of "medication" taken by Fowler or the specific medical condition for which it was prescribed.

5. As a commercial motor vehicle driver regulated by the Department of Transportation ("DOT") rules and regulations, Fowler was required to meet minimum physical qualification standards to operate as an interstate driver. Upon hire, Fowler understood that, pursuant to DOT regulations, he would be required to undergo a physical examination to determine his qualifications to operate a truck, and submit to drug and alcohol testing required by DOT regulations. Plaintiff consented to these requirements.

6. In compliance with DOT regulations, Werner has an Hours of Service policy and a written progressive discipline policy applicable to all drivers as set forth in the Driver Handbook. Fowler received a copy of the Driver's Handbook and signed an acknowledgement of receipt.

7. The Hours of Service policy informs drivers of the maximum number of hours that can be driven in a given period, as well as corresponding discipline for violation of the policy.

8. Fowler violated the Hours of Service policy on several occasions and was disciplined pursuant to the policy.

9. On or about June 29, 2007, Fowler violated the Company's Hours of Service rules for the fifth time when he drove more hours than allowed by the policy and was suspended for 72 hours pursuant to the Drivers Handbook.

10. Plaintiff served his suspension from June 29, 2007, through July 2, 2007.

11. During the suspension, Fowler was not required to stay in his truck for 72 hours. The Hours of Service policy merely prohibited Fowler from operating his truck during the suspension period.

12. Werner has consistently disciplined other employees for similar hours of service violations. Werner is unaware of the disability status of these employees.

13. Pursuant to DOT regulations, Werner regularly conducts random drug and alcohol screens of its driver workforce. Once per quarter, Werner's computer program randomly picks a list of drivers for drug screening and alcohol screening (breathalyzer test). Fowler was aware of these regulations and practices.

14. During the first quarter of 2007, Fowler was one of numerous drivers randomly selected by the computer program for alcohol testing. Fowler was notified of his selection and given the breathalyzer test on February 16, 2007. Other employees, presumably some of whom were non-disabled, also were selected for the alcohol testing and were given a breathalyzer.

15. Fowler passed the breathalyzer test on February 16, 2007, and returned to work.

16. As an interstate driver on a dedicated account, Fowler was paid on a per mile basis for miles driven under dispatch. Fowler's miles driven between September 2006, and November 2007, varied as a result of customer business needs and his own personal schedule.

17. During the time Fowler was employed by DM as an interstate truck driver, Myers was the Operations Supervisor for the Alco/Duckwall account.

18. During the period of time that Myers supervised load assignments for the Alco/Duckwall account, Myers was unaware of Fowler's disability status.

19. In 2007, Fowler's miles driven on the Alco/Duckwall account each month varied as follows: January – 9,054; February – 10,327; March – 8,965; April – 8,104; May – 7,461; June – 7,754; July – 8,524; August – 9,544; September – 6,778; October – 11,855; and November – 11,986.

20. Fowler's miles driven were lower in September because he chose to take time off work after the birth of his child. Fowler's miles driven were higher in October because he was a Trainer, and was paid on the basis of his own miles driven as well as the miles driven by his student.

5

21. Other non-disabled drivers assigned to a dedicated account during the same time frame had similar variances in the miles driven due to customer business needs and personal schedules.

22. Fowler filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 9, 2007 (the "First Charge").

23. On August 21, 2008, the EEOC issued a Dismissal and Notice of Rights letter relating to Fowler's First Charge, finding no probable cause to believe that unlawful discrimination had occurred.

24. Fowler subsequently filed a second Charge of Discrimination with the EEOC on or about August 5, 2008 (the "Second Charge").

25. On January 27, 2009, the EEOC issued a Dismissal and Notice of Rights letter relating to Fowler's Second Charge, again finding no probable cause to believe that unlawful discrimination had occurred.

26. On or about March 15, 2009, Fowler filed a third Charge of Discrimination with the EEOC (the "Third Charge") alleging retaliation.

27. On June 15, 2009, the EEOC issued a Dismissal and Notice of Rights letter relating to Fowler's Third Charge, again finding no probable cause to believe that unlawful discrimination had occurred.

(Filing Nos. 35 and 36.)

### III. ANALYSIS

#### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

#### B. Plaintiff's ADA Claim

Although not completely clear on the face of the Complaint, liberally construed, Plaintiff's claims are brought pursuant to the ADA. As set forth in that statute:

7

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Liberally construed, this is a "regarded as disabled" case under the ADA. This court has previously decided that the ADA Amendments Act of 2008, (Pub. L. No. 110-325, 122 Stat 3553), which went into effect on January 1, 2009, and which amends the definition of "regarded as," is not retroactively applicable. *Rickert v. Midland Lutheran Coll.*, No. 8:07CV334, 2009 WL 2840528, *10-12 (D. Neb. Sept. 2, 2009). The alleged discriminatory acts set forth in Fowler's Complaint occurred prior to January 1, 2009. (Filing No. 1.) Thus, the court will apply only the pre-amendment ADA law in evaluating Fowler's claims, as set forth below.

An employee seeking relief under the ADA must establish that: "he was a disabled person within the meaning of the ADA, that he was qualified to perform the essential functions of the job, and that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Kozisek v. County of Seward, Nebraska*, 539 F.3d 930, 934 (8th Cir. 2008). Further, a person is disabled within the meaning of the ADA only if he demonstrates that he has a physical or mental impairment which substantially limits one or more of his "major life activities," that he has a "record of such an impairment," or that he is "regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Amir v. St. Louis University*, 184 F.3d 1017, 1027 (8th Cir. 1999). Determining whether an individual has a qualifying disability requires an individualized analysis of the claimed disability. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

Fowler does not allege that he has an actual disability. Rather, as set forth in his Charge of Discrimination, Fowler claims that Werner discriminated against him on the basis of a "perceived" disability. The court liberally construes this claim as

arising under the "regarded as" portion of the ADA. In order to prove that he was "regarded" as disabled, a plaintiff must show that his employer "mistakenly regarded him as having an impairment substantially limiting one or more major life activities, or mistakenly believed he had an actual, non-limiting impairment which substantially limited one or more major life activities." *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 783 (8th Cir. 2006). This provision of the ADA "is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Id.* at 784.

Fowler's claims rest entirely on the undisputed evidence that he notified Werner personnel that he had to go to Denver, Colorado to obtain medication. Stated another way, Fowler claims Werner knew he took medication and therefore regarded him as disabled. However, the undisputed evidence shows that no Werner employee knew precisely what medication Fowler was taking or picking up in Denver, or for what condition that medication may have related to. Thus, it is undisputed that Werner did not know that Fowler suffered from any chronic medical condition. Regardless, even if Werner personnel had knowledge of a medical condition and the type of medication Fowler took, the "mere fact that [Werner] had such knowledge" is insufficient to show that Werner regarded Fowler as disabled under the ADA. *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1319-20 (8th Cir. 1996). In short, there is nothing in the record before the court demonstrating that Werner regarded Fowler as having an impairment substantially limiting one or more major life activities, or otherwise regarded him as "disabled" under the ADA. In light of this, Fowler has failed to establish a prima facie case of discrimination, and the court need not reach Defendant's other arguments.

### C. Plaintiff's Retaliation Claim

"To establish a prima facie case of retaliation and survive summary judgment, a plaintiff must demonstrate (1) that he engaged in a statutorily protected activity, (2)

9

that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006) (quotation omitted). Here, there is no question that Fowler engaged in a protected activity by filing the First Charge with the EEOC on November 9, 2007. Regarding the adverse action taken against him, Fowler claims that Werner reduced his mileage, increased surveillance, and discredited him after he filed his First Charge. (Filing No. 1 at CM/ECF p. 7.) However, Fowler submitted no evidence supporting these claims. Indeed, there is nothing before the court showing that Werner engaged in "surveillance" of any kind or any other activities which would "discredit" Fowler. With respect to Fowler's mileage claim, the undisputed evidence shows that, like all drivers assigned to the same account as Fowler, his miles varied based on customer needs and personal schedules, and not because he filed the First Charge. Thus, Fowler has failed to establish a prima facie case of retaliation and this claim is also dismissed.

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment (filing no. 34) is granted.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

3. All other pending motions are denied as moot.

November 10, 2009.                    BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.